# 23-0634-cv

# United States Court of Appeals

*for the*

## Second Circuit

---

XEROX CORPORATION,

*Petitioner-Appellee,*

— v. —

LOCAL 14A, ROCHESTER REGIONAL JOINT BOARD,
XEROGRAPHIC DIVISION WORKERS UNITED,

*Respondent-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR RESPONDENT-APPELLANT

MICHAEL M. DOLCE
HAYES DOLCE
*Attorneys for Respondent-Appellant*
135 Delaware Avenue, Suite 502
Buffalo, New York 14202
(716) 912-3480

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION .....1

STATEMENT OF THE ISSUES................................................................2

STATEMENT OF THE CASE....................................................................2

    A. Preliminary Statement .................................................................... 2

    B. Statement of Facts.......................................................................4

SUMMARY OF ARGUMENT ..................................................................9

ARGUMENT ...........................................................................................10

POINT I

THE DISTRICT COURT ERRED BY NOT DEFERRING THE MATTER TO ARBITRATION

    A. This Court's recent decision in *Niagara Mohawk* requires arbitration of the dispute. .......................................................................................11

    B. The District Court erred by deciding the merits of the vesting dispute. .......17

    C. The District Court erred by *incorrectly* deciding the merits of the vesting dispute. ....................................................................................19

        1. The District Court erred by ignoring relevant contract language. ...........20

            i. The District Court's holding is incompatible with *NRG Energy* because the CBA vests life insurance benefits. ......................................20

            ii. This Court's holding in *Joyce* requires arbitration here. .................21

iii.   There are conflicting vesting clauses for surviving spouse benefits in the text of the CBA. ............................................................................23

iv.   The Parties have sunset other contract provisions at contract expiration, but never retiree benefits........................................................25

2.  The District Court erred by analyzing a Reservation of Rights Clause in Plan Documents outside the CBA. ...............................................................26

3.  All CBAs since the tripartite retiree benefit structure was agreed to in 1994 are relevant to resolve the dispute. .......................................................31

POINT II

THE DISTRICT COURT ERRED BY  SUMMARILY DISMISSING THE DISPUTE

A. Notice and an opportunity to be heard must be given prior to the issuance of summary judgment..............................................................................................36

B. The District Court failed to apply ordinary principles of contract law. ........38

CONCLUSION ........................................................................................................40

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*Abbruscato v. Empire Blue Cross & Blue Shield*, 274 F.3d 90 (2d Cir. 2001) .......31

*Alday v. Raytheon*, 693 F.3d 772 (9th Cir. 2012) ............................................. 30, 33

*Bidlack v. Wheelabrator Corp.*, 993 F.2d 603 (7th Cir. 1993) ...............................22

*Cigna Corp. v. Amara*, 563 U.S. 421 (2011) ..........................................................22

*Coca-Cola Bottling Co. of N.Y. v. Soft Drink & Brewery Workers Union, Local 812*, 39 F.3d 408 (2d Cir. 1994) .............................................................. 17, 18, 29

*Glenn Distributors Corp. v. Carlisle Plastics, Inc.,* 297 F.3d 294 (3d Cir. 2002) ..39

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010); ....................3, 16

*In re AMR Corp.*, 508 B.R. 296 (Bankr. S.D.N.Y. 2014) ................................. 30, 31

*ING Bank NV v. M/V Temara*, 892 F.3d 511 (2nd Cir. 2018) ................................37

*Int'l Ass'n of Machinists & Aerospace Workers, Woodworkers Div., AFL-CIO v. Masonite Corp.*, 122 F.3d 228 (5th Cir. 1997) .....................................................21

*Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130 (2d Cir. 1999) .......................... 21, 22

*Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173 (2d Cir. 2019) ...................................34

*Litton Financial Printing Div., Litton Business Systems, Inc. v. NLRB,* 501 U.S. 190 (1991) .......................................................................................... 13, 17, 33

*Local Union 97, IBEW v. Niagara Mohawk Power Corp.*, 67 F.4th 107 (2d Cir. 2023) ................................................................................................... passim

iii

*Local Union 97, IBEW v. NRG Energy, Inc.*, 53 F.4th 42 (2d Cir. 2022) ....... passim

*Local Union 97, IBEW v. NRG Energy, Inc.*, 561 F. Supp. 3d 322 (N.D.N.Y. 2021) ......................................................................................................28

*M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015) ............... 3, 33, 34, 38

*Ramsey v. Coughlin*, 94 F.3d 71 (2d Cir. 1996) ......................................................36

*Topps v. Cadbury Stani,* 526 F.3d 63 (2nd Cir. 2008)........................................2, 35

## **STATUTES**

28 U.S.C. § 1291 ....................................................................................................1

29 U.S.C. § 1024(b)(4)............................................................................................5

29 U.S.C. § 185 ......................................................................................................1

## **TREATISES**

11 Moore's Federal Practice § 56.71 (3d ed. 2023) .................................................36

11 Williston on Contracts § 31:12 (4th ed. 2023) ...................................................39

11 Williston on Contracts § 32:7 (4th ed. 2023) .....................................................39

11 Williston on Contracts § 33:45 (4th ed. 2023) ...................................................39

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The District Court for the Western District of New York had original jurisdiction of this action pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which grants federal courts jurisdiction over disputes between employers and unions that require interpretation of collective bargaining agreements.

The District Court granted Petitioner Xerox Corporation's ("Xerox" or "Employer") motion to stay arbitration proceedings and for a declaratory judgment by a Decision and Order ("Decision and Order") entered December 20, 2022. Judgment was entered for Petitioner on December 21, 2022. Respondent Local 14A ("Union") filed a motion to alter the judgment pursuant to Federal Rule of Civil Procedure 59(e) on January 13, 2023, based on this Court's recent decision in *Local Union 97, IBEW v. NRG Energy, Inc.*, 53 F.4th 42 (2d Cir. 2022). The District Court denied the Union's motion on April 3, 2023, and entered judgment on April 4, 2023.

This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 185 and appellate jurisdiction pursuant to 28 U.S.C. § 1291 because the appeal is from the Decision and Order and Judgment, which are final and dispose of all Parties' claims. Respondent Local 14A timely filed a Notice of Appeal of the Decision and Order and Judgment on April 18, 2023.

## STATEMENT OF THE ISSUES

1.  Did the District Court err by refusing to defer the matter to arbitration? This Court reviews a stay of arbitration *de novo*. *Local Union 97, IBEW v. NRG Energy, Inc.*, 53 F.4th 42 (2d Cir. 2022).

2.  Did the District Court err when it granted Xerox summary judgment without providing the Union notice and an opportunity to respond? This Court reviews a grant of summary judgment *de novo*. *Topps v. Cadbury Stani,* 526 F.3d 63 (2nd Cir. 2008).

## STATEMENT OF THE CASE

### A.   Preliminary Statement

During the holiday season in December 2021, Xerox sent letters to over 2,000 Local 14A retirees and their families informing them that their health, dental, and life insurance benefits would be effectively eliminated at midnight on February 28, 2022. (JA 758-764; JA 824-919). These plans—and Xerox's contributions to them—remained materially unaltered in consecutive CBAs dating back to at least 1994 and were subject to extensive and reasoned negotiations between the two sides at the time. (JA 328-393; JA 920-921).

Xerox's decision to turn its back on over 2,000 retirees and their families is based on its misreading of a recent Supreme Court decision as changing the law on repudiation of labor contracts. (JA 306). In *Tackett*, the Supreme Court did no more than hold that labor contracts are to be enforced in accordance with their

2

unambiguous terms and that ambiguities are to be resolved through the application of traditional contract analysis to determine the intent of the parties. *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 442 (2015). At the same time, there is no change in the presumption that disputes arising under the terms of a CBA are to be resolved in accordance with the arbitration provisions set forth in the agreement. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010); *Local Union 97, IBEW v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 115-17 (2d Cir. 2023).

Xerox seeks to ensure the Union and thousands of retirees never have their objection to the Employer's behavior heard on the merits. The Union seeks to have this matter decided by an arbitrator, pursuant to the Parties' labor contract.

At the District Court, Xerox argued it cannot be compelled to submit the instant dispute to arbitration for two reasons. First, the Employer argued it cannot be compelled to arbitrate the instant dispute because the collective bargaining agreement expired at the time of the grievance. (JA 10). Second, Xerox argued that retirees lack standing to file grievances. (JA 11). While the District Court ignored Xerox's second argument, it held for the Employer reasoning that there is no language "capable of reasonably being interpreted" as vesting retiree benefits in the Parties' collective bargaining agreement. (SPA 7).

Because of Congress's preference for the resolution of labor disputes through the arbitral forum, and because explicit contract language and ample extrinsic evidence support the Union's argument, the dispute must be sent to arbitration. The Decision and Order of Western District of New York Judge Frank P. Geraci Jr. must be vacated and remanded on each material point, reported at *Xerox Corp. v. Local 14A, Rochester Reg'l Joint Bd., Xerographic Div. Workers United*, No. 22-CV-6219-FPG, 2022 WL 17822137, (W.D.N.Y. Dec. 20, 2022).

## B. Statement of Facts

Xerox and Local 14A have had a contractual relationship for 85 years. That is until November 30, 2021, when Xerox abruptly refused to extend the 2018-2021 CBA during contract negotiations. (JA 19 ¶5). It soon became apparent why. Xerox believed that it could unilaterally terminate retiree health, dental, and life insurance benefits if it no longer had a collective bargaining agreement in place. (JA 21 ¶18). A couple of weeks later, Xerox informed the Union and retirees that it was unilaterally terminating retiree health insurance and other benefits. (JA 19 ¶7; JA 758-764). At midnight on February 28, 2022, over two thousand retirees and their families lost their health, dental, and life insurance. (JA 824-919).

Over the past 30 years, negotiations have led to the development of 3 benefit structures covering various classes of retirees—the "Old Plan", the "New Plan", and the "HRA/Flex Plan" (hereinafter the "tripartite" benefit structure). (JA 747-751;

JA 920-921).  This structure was explicitly incorporated into the CBA.  (JA 335-338; JA 346-350; JA 357-361; JA 369-372; JA 379-382; JA 389-392).  With each benefit plan, the CBA would lock-in the level of benefits to which the individual was entitled based on their length of service, age, and retirement date.  *Id.*

CBAs and ERISA plan documents, like the Plan Restatements, Booklets, and Presentations in the record, (JA 190-281; JA 403-740), all govern retiree benefits under ERISA.  29 U.S.C. § 1024(b)(4).  Here, the record contains some, but not all the relevant documents to determine the dispute.

The health, dental, and life insurance benefits described in the CBA are provided through a variety of mechanisms (indemnity insurance, coordination with Medicare, HMOs, medical reimbursement plans, etc.).  (JA 921 ¶7; JA 335-338).  The details of each mechanism would be described in either insurance contracts or in medical plan documents administered by Xerox.  (JA 921 ¶7-8; JA 403-688).  The long-standing practice of the Parties was to permit the Employer to alter or amend the details of the insurance coverage or the benefit plans within the confines of the CBA.  (JA 921 ¶7).

Xerox's authority to modify the plans and contracts, though, was not plenary.  Xerox could not amend the plan to cause an employee to forfeit credits for retirement rights.  For example, the 1990 Restatement of the New Plan provided:

> 10.1.  In General.  The Company intends to continue the Plan described herein as a permanent program.  However, the Company specifically

5

> reserves the right to amend, suspend or terminate the Plan described herein at any time for any reason, except ***no amendment, suspension or termination of the Plan shall affect benefits previously granted under this Plan to Participants***, and provided further no amendment of the plan may be made which would permit any part of the Trust be used for or diverted to purposes other than the exclusive benefit of the Participants ***or which would diminish any rights accrued for the benefit of participants prior to the effective date of the amendment***.

(JA 509-510) (emphasis added). Until midnight on February 28, 2022, Xerox met its obligations to provide Old Plan, New Plan, and HRA/Flex Plan benefits to retirees pursuant to the CBA. (JA 758-764).

At the time the tripartite benefit structure was agreed to during 1994 contract negotiations, both Parties understood that retiree benefits vested beyond contract expiration for the lifetime of the retirees and surviving spouses. (JA 921 ¶10). The CBAs and ERISA plan documents confirm both Parties' intent as the documents have always contained explicit vesting language. *See*, *e.g.*, (JA 490) ("shall continue as Participants in the Plan … until the earlier of the date on which the Retiree ceases to pay the contributions as shall have been established by the Plan Administrator for coverage under the Plan or 11:59 p.m. on the day of the Retiree's death"); (JA 492) ("In the event of the death of a Retiree while a Participant under the Plan … the Eligible Dependent spouse of such Retiree shall continue as a Participant in the Plan until his or her death."); (JA 699) (describing new "Life Cycle Assistance" Program as a "$10K life time reserve"); (JA 700) (describing "Cash Value Life Insurance" as "post-retirement death benefit (paid up)"); (JA 729) (noting Life Cycle Assistance

6

Program is a "lifetime" benefit); (JA 819) (noting retiree Donald Zinni and his spouse Linda are entitled to "LIFETIME COVERAGE UNDER XEROX MEDICAL CARE PLAN (BLUE CROSS/BLUE SHIELD ADMINISTERS THE PLAN) FOR RETIREE AND SPOUSE…LIFETIME COVERAGE UNDER XEROX DENTAL CARE PLAN FOR RETIREE AND SPOUSE…$5,000 RETIREE LIFE COVERAGE.").

The CBA and other documents informed each active worker of the benefit they would receive if they continued to provide labor to the company until they reached retirement eligibility. In the HRA/Flex Plan, pre-and post-retirement benefits were unified. (JA 335-338). Benefit funds not spent as an active worker on benefits such as childcare or homebuyer benefits, were available for retiree health coverage. (JA 689-740). Such benefits are deferred compensation which vest during the term of the agreement with or without explicit vesting language. *Local Union 97, IBEW v. NRG Energy, Inc.*, 53 F.4th 42, 50 (2d Cir. 2022) ("severance pay constituted a form of deferred compensation that created a right that vested or accrued during the term of the agreement.").

The CBA has contained a materially unaltered Grievance and Arbitration Procedure dating back to at least 1994. (JA 921 ¶9; JA 331-333; JA 341-345; 354-356; JA 365-368; JA 376-378; JA 386-388). Under this Grievance and Arbitration Procedure, the Union and the Employer arbitrated a dispute regarding the

interpretation of the same retiree benefit plan language in 2003-2004. (JA 921 ¶9; JA 741-757).

The Union filed a grievance over the Employer's unilateral elimination of a major provision of the CBA. (JA 19 ¶8; JA 186-189). The Employer denied the Grievance at Step 3 of the Grievance and Arbitration Procedure. (JA 21 ¶16; JA 282-284). The Union demanded arbitration under Step 4 of the Grievance and Arbitration Procedure three business days later. (JA 21 ¶17; JA 285-287). Step 4 of the Grievance and Arbitration Procedure requires arbitration "[i]n the event that a grievance is not satisfactorily settled at Step 3 […] it may only be appealed to arbitration by either party upon written notice to the other party within sixty (60) working days from the date the Step 3 answer was delivered to and acknowledged in writing by the Business Agent." (JA 386-388).

Despite the Union's compliance with the Grievance and Arbitration Procedure, the Employer refused to arbitrate the dispute without any justification in the contract, rather relying on the fact that the Employer refused to extend the contract during ongoing contract negotiations. (JA 21 ¶18). The Union then served Xerox its Notice of Intent to Arbitrate the dispute pursuant to CPLR § 7503. (JA 21 ¶19; JA 288-294). Xerox brought this federal court action to stay arbitration in response.

The District Court granted Xerox's motion to stay arbitration proceedings and for a declaratory judgment. (SPA 1-11). Respondent Local 14A ("Union") filed a motion to alter the judgment under this Court's recent decision in *Local Union 97, IBEW v. NRG Energy, Inc*., 53 F.4th 42 (2d Cir. 2022). (JA 1087-1093). The District Court denied the Union's motion, and this appeal followed. (SPA 13-21; JA 1111).

## **SUMMARY OF ARGUMENT**

This is at least the third case before this Court during the past year challenging a district court's stay of arbitration over the vesting of retiree benefits under a CBA. In the two prior cases, *Local Union 97, IBEW v. NRG Energy, Inc.*, 53 F.4th 42 (2d Cir. 2022) ("*NRG Energy*") and *Local Union 97, IBEW v. Niagara Mohawk Power Corp.*, 67 F.4th 107 (2d Cir. 2023) ("*Niagara Mohawk*"), this Court criticized the district court's legal analysis as well as the trial court's intrusion into an evaluation of the merits of the grievance, the exclusive province of the arbitrator. This Court directed arbitration in both cases and Appellant Local 14A seeks a similar result in this appeal.

This brief will argue that the dispute is arbitrable under the *Niagara Mohawk* standard, and that the District Court erred by both deciding the merits of the vesting dispute and *incorrectly* deciding the merits of the dispute. The brief will also argue for reversal on the basis that the District Court sua sponte granted summary

9

judgment without notice to the Union and an opportunity to challenge the factual statements by Xerox. The District Court's decision must be vacated and remanded on each material point, and the dispute must be sent to arbitration.

## ARGUMENT

### POINT I

### THE DISTRICT COURT ERRED BY NOT DEFERRING THE MATTER TO ARBITRATION

The instant dispute is arbitrable under this Court's recent decision in *Niagara Mohawk.*, 67 F.4th 107 (2d Cir. 2023). The Parties have always interpreted the CBA's arbitration clause as covering retiree benefit disputes and have arbitrated such disputes in the past. If the Court determines that the expiration of the CBA creates an ambiguity in enforcement of the arbitration clause, the presumption of arbitrability requires arbitration here. Under the *Niagara Mohawk* standard, the District Court erred in precluding arbitration in the post contract period.

The District Court also erred in its arbitrability analysis under *NRG Energy*. First, the District Court decided the merits of the vesting dispute when this Court's precedent is clear the merits are for the arbitrator to decide. Second, the District Court *incorrectly* decided the merits of the vesting dispute, misapplying the law in numerous ways. For example, the District Court ignored CBA language that this Court has held creates an "arguable" vesting claim. Moreover, the District Court erred by considering a reservation of rights clause in supplemental plan documents

to the collective bargaining agreement, a matter this Court has left to the exclusive authority of the arbitrator. Compounding this error, the District Court ignored a conflicting reservation of rights clause in earlier versions of the same plan documents, effective when the Parties negotiated the tripartite retiree benefit structure. Finally, the District Court failed to analyze vesting claims under the Parties' prior collective bargaining agreements, exclusively focusing on the 2018-2021 iteration. The arbitration provisions in each of the expired collective bargaining agreements apply in this case. Because Xerox is unable to demonstrate the dispute is not subject to arbitration, the District Court's Decision and Order must be vacated and remanded on each material point.

## A. This Court's recent decision in *Niagara Mohawk* requires arbitration of the dispute.

This Court recently clarified the appropriate analysis district courts should undertake to determine whether a CBA's arbitration clause applies to a dispute between an employer and union. *See Niagara Mohawk*, 67 F.4th 107 (2d Cir. 2023). First, "[a] court may only compel arbitration where it is 'satisfied that neither the formation of the parties' arbitration agreement *nor* ... its enforceability or applicability to the dispute is in issue.'" *Id.* at 113 (emphasis in original). Second, "[i]n the narrow set of circumstances where a court finds that the parties have entered into a valid and enforceable agreement to arbitrate, but the agreement is 'ambiguous about whether it covers the dispute at hand,' the court may apply a 'presumption of

11

arbitrability.'" *Id.* The *Niagara Mohawk* decision replaced this Court's prior standard, which first determined whether an arbitration clause was broad or narrow, and applied a presumption of arbitrability depending on the scope of the clause. *Id.* at 113-14.

In *Niagara Mohawk*, this Court highlighted the appropriate analysis the court should undertake in a retiree benefits dispute under a collective bargaining agreement:

> Although retired employees may not be members of a bargaining unit under the National Labor Relations Act, employers may contractually obligate themselves to provide benefits to retired employees. Where employers have undertaken such contractual obligations, accepted contract principles indicate that a union has a legitimate interest in protecting the rights of the retirees and is entitled to seek enforcement of the applicable contract provisions. Therefore, where an employer refuses to provide benefits to retired employees, the union that negotiated with the employer for those benefits may bring a grievance or sue because the refusal will injure the Union by depriving it of the benefit of its bargain.

*Id.* at 115 (quotations and citations omitted). The decision then outlined the appropriate standard to apply in assessing whether an arbitration clause covers the dispute.

The facts of *Niagara Mohawk* mirror those here. There, the Employer first presented a threshold issue—affected retirees had retired under prior collective bargaining agreements and therefore the arbitration clause in the CBA did not apply to them. *Id.* at 116. Here, the Employer also raises a threshold issue—that the CBA

had expired at the time of the Grievance and therefore is not subject to the CBA's arbitration provision. (JA 21). However, as the Second Circuit noted in *Niagara Mohawk*, "[t]he Union's grievance does concern the Agreement" because it implicates benefits as outlined in the CBA. 67 F.4th at 116. The same analysis is relevant here—because the retiree benefits dispute "concern[s] the Agreement," and the Union grieved an issue over that provision of the CBA, then the dispute is subject to the CBA's arbitration clause. *See Litton Financial Printing Div., Litton Business Systems, Inc. v. NLRB,* 501 U.S. 190, 205 (1991) ("It follows that if a dispute arises under the contract here in question, it is subject to arbitration even in the postcontract period.").

In *Niagara Mohawk*, "the grievance and arbitration process is available '[s]hould' the Union 'claim that a dispute or difference has arisen between the Company and [the Union] as to the meaning, application[,] or operation of any provision of this Agreement.'" 67 F.4th at 116. Therefore, this Court determined that two conditions must be met to arbitrate under the CBA: "first, that the Union claims a dispute has arisen and, second, that the dispute concerns a provision of the Agreement." *Id.*

Here, the arbitration clause states "in the event that a grievance is not satisfactorily settled at [the prior step of the Grievance procedure][…] it may only be appealed to arbitration by either party upon written notice to the other party within

sixty (60) working days from the date [the prior step] answer was delivered to and acknowledged in writing by the Business Agent." (JA 387). Therefore, a Grievance is arbitrable under the Parties' CBA when [1] the Grievance is not satisfactorily settled at the prior step and [2] one party timely appeals the dispute to arbitration upon written notice to the other party. There is no dispute the Grievance did not settle at the prior step and that the Union timely appealed to arbitration, (JA 19-21), and therefore the dispute over retiree benefits is arbitrable under the CBA.

Like the employer in *Niagara Mohawk*, Xerox argues that only "employee" complaints can become grievances under the CBA. (JA 21). This Court dismissed that argument as "unavailing": "The [retiree benefits] section stretches over nearly two pages of the Agreement and contains detailed provisions about retirees' eligibility for benefits, the scope of health and life insurance coverage, and the amounts retirees who elect coverage will be charged." 67 F.4th at 116-17. The same is true here, only there are *more* pages committed to retiree benefits in the agreement.

The Parties' past practice also undermines Xerox's recent interpretation of the arbitration clause. As this Court determined in *Niagara Mohawk*, "there is evidence that the Union has, in its own name, previously filed grievances regarding benefits the Company agreed to provide retired employees. While the record of these earlier grievances -- two of which the Company rejected as 'not arbitrable' -- is not unequivocally favorable to the Union, there is no evidence the Company refused to

14

accept a grievance because it was filed by the Union, rather than by an employee." 67 F.4th at 117.

Here, the extrinsic evidence is "unequivocally favorable" to the Union because the Parties *already arbitrated a dispute over the exact same retiree benefits language* under the same grievance and arbitration procedure. (JA 741-757). There, the "Subject" of the Arbitration was "Retiree Flexible Benefit Program Pre-65 Retirees" and concerned the interpretation of the benefit cap in the HRA/Flex Plan and whether that cap violated a provision contained in the New Plan. *See id.* Nothing about the dispute regarded "employees" nor "employee complaints" nor "unresolved employee complaints." Rather, the two Parties had different interpretations of contract language regarding retiree benefits, so they submitted the dispute to arbitration. Xerox must be ordered to do so again here.

Under the *Niagara Mohawk* analysis, if the Court determines that the expiration of the CBA creates an ambiguity in the enforcement of the arbitration clause, then it must apply the presumption of arbitrability. 67 F.4th at 114. The Supreme Court has explicated the presumption of arbitrability as "a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and (absent a provision clearly and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass the dispute." *Granite Rock Co. v. Int'l Bhd. of*

*Teamsters*, 561 U.S. 287, 303 (2010). Such disputes are arbitrable when they "arise under" the CBA and are not excluded from the CBA's arbitration provision. *Id.* at 304-05. Here, there is no dispute that CBA retiree benefits are provided in the text of the CBA and that the Parties did not exclude retiree benefits disputes from the CBA's grievance and arbitration procedure. Therefore, the arbitration clause in the CBA applies to the instant dispute.

It is worth noting that the Parties have explicitly excluded certain disputes arising under the CBA from the grievance and arbitration procedure. (JA 36) ("The probationary period shall include the Company's right to extend for an additional thirty (30) days, with notification to the union. Additionally, the Company has the right to extend for an additional thirty (30) days, with notification to the Union. The exercise of such right shall not be subject to arbitration."); (JA 46) ("Article XI, Grievance Procedure shall not apply to the job move."); (JA 74) ("Such employees shall not be entitled to resort to the grievance procedure about issues relating to the temporary assignment."). There is no dispute that the Parties did *not* exclude retiree benefits disputes from the grievance and arbitration procedure. Rather, the Parties have always submitted such disputes to arbitration. (JA 741-757). Xerox must be ordered to arbitrate as it has always done under the CBA.

**B.**      **The District Court erred by deciding the merits of the vesting dispute.**

In the Second Circuit, the issue of whether a benefit vested under a collective bargaining agreement is within the purview of the arbitrator and the merits of a vesting claim are left to the arbitrator to decide. *NRG Energy*, 53 F.4th at 55. ("The district court did not adopt this approach, concluding instead that it was necessary to determine whether the Pre-2019 Retirees have a vested lifetime interest to 'reach a conclusion as to whether they may seek arbitration under the *Litton* test.' This was error. We are only concerned with whether this matter is arbitrable.") (internal citation omitted). All the Court must decide to defer the matter to arbitration is whether there is an "arguable" claim, "even if it appears to the court to be frivolous." *Id.* at 53 (*quoting Coca-Cola Bottling Co. of N.Y. v. Soft Drink & Brewery Workers Union, Local 812*, 39 F.3d 408, 410 (2d Cir. 1994)).

In the instant case, the District Court refused to apply the appropriate standard. Rather, the District Court determined, on the merits, that the Union failed to overcome Xerox's position. The District Court refused to defer the matter to arbitration because "the language Respondent relies upon does not clearly or expressly vest the benefits in question for life." (SPA 7).

This Court issued its decision in *NRG Energy* the month before the District Court's decision here. Following the issuance of the District Court's decision granting a stay of arbitration and granting declaratory judgment dismissing the

17

action, the Union filed a motion pursuant to Federal Rules of Civil Procedure Rule 59 asking the District Court to reconsider in light of the *NRG Energy* decision.  (JA 1087-1093).   The District Court's decision denying the motion demonstrates profound lack of appreciation for the presumption of arbitrability.  The District Court blatantly rejected decades of jurisprudence holding that arguable grievances are presumptively arbitrable.  *See Coca-Cola Bottling Co.*, 39 F.3d at 410-11.  When presented with this Court's *NRG Energy* decision, the District Court responded: "When considered within the context of the Second Circuit's decision, the Court cannot conclude that the instruction introduces a new, independent standard that such a claim need only be 'arguable,' without more, to reach arbitration." (SPA 19).

The District Court's failure to apply the appropriate standard invalidates its analysis time and time again.   For instance, when presented with affirmative "lifetime" language in the CBA regarding the "Life Cycle Assistance Program" component of the HRA Plan, the District Court surmised:

> [W]ith respect to Respondent's contention that the use of a retiree's actuarily calculated life expectancy unambiguously vests the above referenced benefit program under the HRA plan for life, the Court similarly finds this aspect of the relevant HRA plan insufficient to vest such a benefit. No case in the Second Circuit has directly addressed such a claim, but the Court concludes that HRA plan documents do not show an intent to vest such a benefit. Indeed, as the plan documents show, the above referenced life expectancy language is but one of several factors used to calculate a retiree's benefit allowance under the HRA plan.

18

(SPA 8-9). The District Court does not need to determine whether such language "unambiguously vests" the benefit, rather it just needs to determine whether explicit contract language creates an ambiguity in the CBA, and once an ambiguity is identified the dispute must be decided by an arbitrator pursuant to the terms of the contract. The fact the Court analyzed the lifetime language as it relates to other contract language inherently means the language at issue creates an ambiguity as to whether the benefits vested beyond contract expiration. The District Court should have gone no further.

### C. The District Court erred by *incorrectly* deciding the merits of the vesting dispute.

The District Court erred in its vesting analysis. First, the District Court ignored CBA language that this Court has held creates an "arguable" vesting claim, amongst other relevant contract language. Second, the District Court erred by considering a reservation of rights clause in supplemental plan documents to the collective bargaining agreement, a matter this Court has left to the exclusive authority of the arbitrator. Compounding this error, the District Court ignored a conflicting reservation of rights clause in earlier versions of the same plan documents, effective when the Parties negotiated the tripartite retiree health benefit structure. Third, the District Court failed to analyze vesting claims under the Parties' prior collective bargaining agreements, exclusively focusing on the 2018-2021 iteration. This Court should address and remand each material point.

1. *The District Court erred by ignoring relevant contract language.*

The District Court erred by ignoring clauses that vest retiree benefits beyond contract expiration. First, the District Court only analyzed whether retiree health insurance benefits vested—not life insurance benefits. Second, the District Court overextended the holding of *Joyce* to preclude arbitration. Third, the CBA has conflicting surviving spouse vesting clauses that must be resolved by an arbitrator. Fourth, the Parties have sunset other contract provisions, but never retiree benefits.

i. *The District Court's holding is incompatible with* NRG Energy *because the CBA vests life insurance benefits.*

In *NRG Energy*, this Court held: "Here, the argument in favor of arbitrability rests on the use of the word 'grandfathered' and the fact that the benefit conferred is life insurance which only goes into effect at the end of the retiree's lifetime. However, this is enough evidence for [the Union] to get to arbitration." 53 F.4th at 55. In the instant case, retiree life insurance benefits are likewise at issue, as Xerox unilaterally terminated retiree health, dental, and life insurance benefits as outlined in Article VIII (and the appropriate benefits schedule) in each iteration of the CBA. (JA 335-338; JA 346-350; JA 357-361; JA 369-372; JA 379-382; JA 389-392). Because life insurance benefits are in dispute here, the District Court's decision is incompatible with this Court's holding in *NRG Energy*. The District Court's holding limits its analysis to retiree health benefits, even though the Union's grievance and the relevant portion of the CBA includes health, dental, and life insurance benefits.

20

There is no dispute that Xerox unilaterally eliminated all three, (JA 761), and that the Union grieved all three. (JA 186-189). Limiting its analysis to only one such benefit at issue is reversible error, summarily foreclosing arbitration over the vesting of each benefit while only analyzing one.

> ii.     *This Court's holding in* Joyce *requires arbitration here.*

The District Court's reliance on *Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130 (2d Cir. 1999) also invalidates its vesting analysis. (SPA 8). In *Joyce*, the Second Circuit held that LMRA 301 plaintiffs had not sustained their burden to demonstrate that "death" language vested retiree health benefits. The case was not over the arbitrability of the dispute, rather the merits of the dispute were before the court.

Courts have held that "the phrase 'until death' can be construed either as a limiting or a right-granting provision" and therefore "[b]ecause the agreements are ambiguous, the district court should have considered extrinsic evidence of intent." *Int'l Ass'n of Machinists & Aerospace Workers, Woodworkers Div., AFL-CIO v. Masonite Corp.*, 122 F.3d 228, 233 (5th Cir. 1997). In *Joyce*, the Western District of New York analyzed the Fifth Circuit case *Masonite* and determined "the language on which the plaintiffs relied [in *Masonite*] ('[retirees] will be entitled to comprehensive medical expense insurance benefits for themselves and their covered dependents until the death of the retired employee') ***supported their argument significantly more strongly than any of the language in the present case***." *Joyce*

*v. Curtiss-Wright Corp.*, 179 F.R.D. 99, 101 (W.D.N.Y. 1998), *aff'd*, 171 F.3d 130 (2d Cir. 1999) (emphasis added). This Court then affirmed the district court's decision.

Rather than offer support to the District Court's holding here, the *Joyce* decision supports the arbitrability of the instant dispute because "until death" is inherently ambiguous, and therefore the arbitrator must consider extrinsic evidence to determine the meaning of the CBA. *See Joyce*, 171 F.3d at 135 *(citing Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 608 (7th Cir. 1993) ("But the agreements are not silent on the issue; they are merely vague. They say that once retired employees reach the age of 65 the company will pick up the full tab for their health insurance and that when they die their spouses will continue to receive supplemental health benefits, again at the company's cost. This could be thought a promise to retired employees that they and their spouses will be covered for the rest of their lives. For the provision does not say 'when they die or the collective bargaining agreement expires, whichever occurs first,' but simply when they die.")). This argument was fully briefed by the Parties to the District Court. (JA 1052-1054; JA 1070-1071).

In the instant case, there is strong extrinsic evidence to support the notion that "until death" is a right-granting provision because official Xerox communications have affirmed "lifetime" retiree medical and dental coverage for decades. *See*, *e.g.*, (JA 699; JA 820-821); *see Cigna Corp. v. Amara*, 563 U.S. 421, 438 (2011) (holding

ERISA summary documents "do not themselves constitute the terms of the plan," yet they remain "important to interpret the terms of the plan"). Under *Joyce*, the instant dispute must be sent to arbitration.

> ### iii. There are conflicting vesting clauses for surviving spouse benefits in the text of the CBA.

The Parties' course of dealing also reveals that both Parties have always interpreted ambiguous contract language to vest benefits for life. The Old Plan and the New Plan were originally medical care plans for Xerox employees under prior contracts. (JA 394-396; JA 397-402). The Parties incorporated the plans into subsequent CBAs by reference to the prior agreements and not by rewriting them into each iteration of the CBA. Every CBA from 1994-2021 explicitly incorporates "Schedule C., IV of the 1980-1983 Labor Agreement" (the Old Plan) and "Schedule C., IV of the 1989-1992 Labor Agreement" (the New Plan) into the retiree benefits section. (JA 335-338; JA 346-350; JA 357-361; JA 369-372; JA 379-382; JA 389-392).

Both original plans have the exact same "surviving spouse" clause which vests benefits beyond the duration of the contract. *Id.* ("The surviving spouse of a deceased employee, in addition to any dependent children, shall continue to be covered for (2) years."). The two-year provision of benefits to surviving spouses under the Old Plan and New Plan is important because it overrides the argument that Xerox is not obligated to pay out benefits to surviving spouses after contract

23

expiration—the clause necessarily extends benefits beyond the term of the agreement for the surviving spouse of any retiree who dies within two years of contract expiration. The presence of this language directly undermines the notion that the general durational clause controls the dispute.

During the 1994 contract negotiations, the Parties replaced the Old Plan and New Plan 2-year vesting language for surviving spouses with explicit lifetime vesting language for both retirees and surviving spouses as contained in the CBA, Plan Restatements, and other ERISA plan documents. (JA 335-338; JA 490). The Employer's actions confirm this change, as it has paid out surviving spouse benefits under the Old Plan and New Plan for decades, not just for two years. (JA 765-814). As Simone Lockley, a surviving spouse, wrote the Union after receiving her benefits termination letter:

> The end of December 2021 I received a letter from Xerox informing me that I will be losing my health insurance coverage by March 1, 2022. What a shock since health insurance was a part of his retirement package in 1995, after giving 25 years of service to the company. When he passed in 2017 I called the Xerox Benefit's office and was told that, as his widow, I would be covered until I died.

(JA 786). Xerox provided retirement benefits to Lockley and her surviving spouse for twenty-two years after retirement, and then to Lockley as a surviving spouse after her husband's death for another five years. While such extrinsic evidence supports the argument that benefits for retirees and surviving spouses vested for life under the contract, the conflicting contractual vesting terms of surviving spouse benefits—two

24

years *or* life (both of which vest benefits beyond contract expiration)—must be interpreted and resolved by the arbitrator pursuant to the contract.

>    iv.  *The Parties have sunset other contract provisions at contract expiration, but never retiree benefits.*

The District Court also failed to account for language in the CBA which sunset certain provisions at contract expiration and not others.  (JA 36) ("***For the term of the contract***, the Company commits to maintain Webster Manufacturing Operations as the site responsible for the final assembly and test of all Xerox designed Production System Print Marking Engines to include DocuTech, Nuvera New Build, and iGen3 Product Family type products.") (emphasis added); (JA 36) ("It is agreed, between the Parties, that the Company will not outsource the work performed by the Multi-Skill Mechanic, Multi-skill Electrician and Maintenance Assistant classifications that comprise the "CMM" Seniority Unit ***for the term of the 2018-2021 Collective Bargaining Agreement only***.") (emphasis added).  The District Court then applied the general durational term of the contract to eliminate retiree health benefits even though such sunset language was not included anywhere in the text of the relevant retiree benefits Article or Schedule.  (JA 335-338; JA 346-350; JA 357-361; JA 369-372; JA 379-382; JA 389-392).  Failing to account for such implicit contract terms invalidates the District Court's analysis.

> 2. *The District Court erred by analyzing a Reservation of Rights Clause in Plan Documents outside the CBA.*

The District Court improperly analyzed a reservation of rights clause in a supplemental plan document outside the text of the collective bargaining agreement. This was reversible error for two reasons. First, this Court recently held that analyzing such documents and whether their provisions are incorporated into the collective bargaining agreement are matters for the arbitrator to decide. Second, the District Court failed to account for the reservation of rights clause in the same supplemental plan documents during 1994 negotiations, ignoring a critical piece of evidence to determine whether any benefits had vested under the prior CBAs.

In *NRG Energy*, the employer contended that vesting claims based on a prior MOA were not subject to the CBA's arbitration clause. The district court agreed with the employer, and "held that the 2003 MOA was not incorporated by reference and does not supplement the Prior CBAs[.]" 53 F.4th at 53. As this Court pointed out in overturning the district court decision:

> The district court and NRG's arguments regarding incorporation by reference miss the mark. Here, we are solely focused on the issue of whether Local Union 97's claims are arbitrable or not. Under our precedents regarding collateral agreements pursuant to a broad arbitration clause, whether the collateral agreement was made, what it specified, whether it was breached and whether breach of the agreement gives rise to a remedy ... are all matters for the arbitrators.

*Id.* at 54 (internal quotations and citations omitted).

Here, whether the reservation of rights clause is incorporated into the collective bargaining agreement and whether the clause has any "persuasive" effect are both matters for the arbitrator to decide. All that is before the Court is whether there is ambiguous contract language that is "capable of reasonably being interpreted" as vesting language. *Id.* at 55. Therefore, the Court erred when it determined "in the absence of 'clear and express' language in favor of vesting, the Court additionally finds persuasive the CBA's inclusion of 'reservation of rights' language in reaching its conclusion that the present dispute is not arbitrable." (SPA 9).

In addition, differing reservation of rights clauses in supplemental plan documents over the course of successive CBAs at issue here demonstrate exactly why the dispute must be sent to arbitration. The District Court only examined the most recent iteration of the reservation of rights clause, perhaps based on its error that only the most recent CBA is relevant to resolve the dispute. (SPA 6-7). However, the reservation of rights clause the District Court relied on did not exist during the 1994 negotiations. During those negotiations, the provision in the same plan document explicitly stated:

> The Company intends to continue the Plan described herein as a permanent program. However, the Company specifically reserves the right to amend, suspend, or terminate the Plan described herein at any time and for any reason, ***except that no amendment, suspension or termination of the Plan shall affect benefits previously granted under this Plan to Participants, and provided that no amendment*** of the Plan

may be made which would permit any part of the Trusts to be used for or diverted to purposes other than for the exclusive benefit of the Participants or **which would diminish any rights accrued for the benefit of Participants prior to the effective date of the amendment**.

(JA 509-510) (emphasis added).  Therefore, even if the reservation of rights clause was incorporated into the CBA, the clause did not give Xerox the right to unilaterally terminate the benefits of existing retirees because it could not "diminish any rights accrued for the benefit of Participants prior to the effective date of the amendment."

What the District Court held is that Xerox reserved the right to unilaterally amend the language of the reservation of rights clause, and then later it did unilaterally amend that language, and then after amending that language it unilaterally terminated benefits bargained-for in the CBA based on the unilaterally amended language.  This holding clearly flouts established precedent:

> Under New York law and the law of [the Second] Circuit, two essential elements must be satisfied before a document will be deemed to have been incorporated by reference into another instrument or agreement. First, the agreement must specifically reference and sufficiently describe the document to be incorporated, such that the latter may be *identified beyond all reasonable doubt*.  Second, **it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.**

*Local Union 97, IBEW v. NRG Energy, Inc.*, 561 F. Supp. 3d 322, 330 (N.D.N.Y. 2021) (emphasis in original) (extra emphasis added).  Obviously, one cannot assent to a term that does not exist.

Rather than support the District Court's position that the dispute is not arbitrable, the differing reservation of rights language raises a litany of factual issues—is the language incorporated into the CBA?; which language is incorporated?; when was that language incorporated?; does the reservation of rights clause negate vesting language in the text of the CBA as well as the plan document?; etc.…—all of which must be determined by the arbitrator, not the Court. *Coca-Cola Bottling Co*., 39 F.3d at 411 ("Whether such a side agreement was made, what it specified, whether it was breached, and whether, under the circumstances of this case, breach of such a side agreement gives rise to a remedy under the express or implied provisions of Article 11(c) of the CBA or otherwise affects the CBA are all matters for the arbitrators.").

While the District Court erred by analyzing the reservation of rights clause at all, it also erred in its analysis. The District Court mischaracterized the record by stating "the Court additionally finds persuasive the CBA's inclusion of 'reservation of rights' language in reaching its conclusion." (SPA 9). There is no "reservation of rights" language in the CBA, rather the language is in referenced plan documents.

The District Court did not attempt to deal with the Union's argument under the Ninth Circuit's *Alday* analysis to determine whether the language of a supplemental document is incorporated into the text of the CBA. (JA 956-962). There, the Ninth Circuit went through an extensive analysis of when a reservation

29

of rights clause in a supplemental document is incorporated into a CBA, and when it is not. *See Alday v. Raytheon*, 693 F.3d 772 (9th Cir. 2012).

To briefly summarize here, the Ninth Circuit held that a reservation of rights clause in a supplemental plan document was not incorporated into the CBA because [1] the clause was limited to *the Plan*; [2] the Plan itself explicitly recognized that differences in related CBAs controlled; and [3] "contributions" and "benefits" are different things under ERISA, and therefore just because a plan document that outlines benefits is referenced in a CBA does not mean an employer's contributions as outlined in the text of a CBA are controlled by the reservation of rights clause; in addition to other factors such as timing. *See id.* at 786-94. Every material point of the *Alday* holding applies to the plan documents and CBAs at issue here. (JA 956-962).

The Southern District of New York Bankruptcy Court approved the *Alday* analysis and found that a reservation of rights clause in a supplemental plan document was not incorporated into the CBA. *In re AMR Corp.*, 508 B.R. 296 (Bankr. S.D.N.Y. 2014). There, the court noted:

> The Second Circuit has not addressed this issue. Other courts that have considered this question have concluded that, where a plan and CBA conflict, the bargained-for CBA should control over the employer-drafted plan documents. As the Fifth Circuit explained: "[a] reservation-of-rights clause in a plan document ... cannot vitiate contractually vested or bargained-for rights. To conclude otherwise would allow the company to take away bargained-for rights unilaterally."

30

*Id.* at 318-19. While this Court has not directly addressed the issue, it has hinted that reservation of rights language only applies to the *same* document. *Abbruscato v. Empire Blue Cross & Blue Shield*, 274 F.3d 90, 100 (2d Cir. 2001) ("we emphasize that our holding today is limited to those situations where the *same* document contains both the promise and the reservation of rights.") (emphasis in original). Here, this Court should directly address this issue to prevent employers from using language in unilaterally controlled plan documents to undermine bargained-for rights.

> 3.   *All CBAs since the tripartite retiree benefit structure was agreed to in 1994 are relevant to resolve the dispute.*

The District Court erred by limiting its analysis to the Parties' most recent CBA. (SPA 10) ("the CBA between the parties effective June 11, 2018 through November 30, 2021 did not vest lifetime retiree health benefits past the duration of the CBA"). In *NRG Energy*, this Court held: "The district court also incorrectly concluded that the dispute is not arbitrable under either the prior CBAs or the 2003 MOA." 53 F.4th at 53. In siding with the union, this Court determined "because the 2003 MOA is a supplemental agreement to the Prior CBAs and the 2003 MOA promises 'grandfathered' life insurance benefits for retirees, it is arbitrable under the broad arbitration provisions of the collective bargaining agreements in effect from

2003 to 2019." *Id.* at 54-55. Therefore, all the CBAs from 1994 to 2021 are relevant to determine the instant dispute, not just the most recent iteration.

This error by the District Court forecloses many important considerations to determine the arbitrability of the dispute. First, the District Court's error effectively eliminates the context in which the tripartite benefit structure was created. As Arbitrator Dana Eischen noted in the first sentence of his decision the last time the Parties arbitrated a dispute over retiree benefit language: "The present dispute cannot be understood, let alone resolved, without properly placing it in the context out of which it arose-- a complex history spanning nearly 25 years of bargaining between these Parties on the subject of retiree medical care benefits." (JA 747).

This limitation dooms the District Court's decision because it eliminates arguments over implicit contract terms. For instance, the Parties agreed to a lifetime "LifeCycle Assistance Program" for future retirees in the "HRA/Flex Plan" to replace the "Old Plan" and "New Plan." (JA 752-754). This was done in part to help ease Xerox's accounting obligations under the recently imposed FAS 106 guidelines in the 1990s. (JA 754). This is relevant for the instant dispute because if one of the benefits agreed to is a set lifetime account to ease accounting responsibilities *into the future*, then it is reasonable to argue that the Parties' understood other related benefits to also extend beyond contract expiration. The Supreme Court has noted that when contract language is ambiguous then implicit

contract terms are vital to determine the dispute.  *See M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 443 (2015) (Ginsburg, J. concurring) (*quoting Litton Financial Printing Div., Litton Business Systems, Inc. v. NLRB,* 501 U.S. 190, 203, 207 (1991) ("[C]onstraints upon the employer after the expiration date of a collective-bargaining agreement," … "may arise as well from ... implied terms of the expired agreement.")).

Second, by not analyzing each CBA since the tripartite benefit structure was agreed to during 1994 negotiations, the District Court eliminated from its analysis the relevant reservation of rights clause at the time of agreement.  (JA 509-510).  This is important because the reservation of rights clause relied on by the District Court to foreclose arbitration was unilaterally imposed by the Employer and never negotiated with or agreed to by the Union.

Third, the CBA was in effect each time the Plan Administrator amended the reservation of rights clause from 1995-2016; and therefore, Xerox was under an obligation to notify the Union "of its intention to have this Agreement changed, altered, amended, or terminated" if the clause was incorporated into the CBA.  (JA 334; JA 351; JA 362; JA 373; JA 383; JA 394) (CBA zipper clause in each agreement); *see also Alday*, 693 F.3d at 794.  ("Because the particular right at issue—that the company would pay for eligible retirees' medical insurance—is expressly contained in the CBAs themselves, it is protected from unilateral

amendment by the CBAs' zipper provision."). Xerox never notified the Union of any amendments to the clause because it knew that clause was never incorporated into the CBA.

Fourth, by only analyzing the dispute under the most recent CBA, the District Court foreclosed analysis of the course of dealing between the Parties, which is relevant to determine the Parties' understanding of the agreement. As this Court noted in *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 178 (2d Cir. 2019), it was compelling extrinsic evidence that the employer continued "to provide medical coverage to union retirees until years later, when, in December 2015, [the employer] undertook a review of its collective bargaining agreements in light of the Supreme Court's decision in *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015)." The decision also notes that communications sent from the employer to union retirees throughout the period indicated it always understood retiree benefits to vest beyond contract expiration. *Id.* at 185. Here, this same analysis applies as Xerox had not altered retiree health, dental, and life insurance benefits under the CBA since 1994, and there is extensive extrinsic evidence that the Employer always understood its obligation was to provide benefits for the "lifetime" of retirees and surviving spouses under the CBA. (JA 765-814; JA 820-21; JA 699). By only analyzing the most recent collective bargaining agreement, the District Court's analysis of the relevant factual background was inherently doomed.

## POINT II

## THE DISTRICT COURT ERRED BY
## SUMMARILY DISMISSING THE DISPUTE

The District Court's impermissible intrusion into the merits of the Union's grievance not only tainted its decision on arbitrability, but it also led the Court to sua sponte grant summary judgment dismissing the Union's grievance. The District Court's granting declaratory judgment in favor of Xerox must be reversed for violation of both procedural and substantive standards.

By its very nature, a dispute over ambiguous contract language is not amenable to summary judgment. Traditional standards for determining the intentions of the parties require consideration of extrinsic facts. This Court has held that "summary judgment may be granted in a contract dispute only when the contract language upon which the moving party relies is found to be wholly unambiguous and convey a definite meaning." *Topps v. Cadbury Stani,* 526 F.3d 63, 68 (2nd Cir. 2008).

The Union appeals from the grant of summary judgment on two grounds: (1) the District Court failed to give the notice required by Federal Rules of Civil Procedure Rule 56(f) and provide the Union with an opportunity to identify disputes with respect to material facts; and (2) the District Court failed to apply ordinary principles of contract law in its analysis.

### A.     Notice and an opportunity to be heard must be given prior to the issuance of summary judgment.

Before a district court can sua sponte grant summary judgment, the Federal Rules of Civil Procedure mandate the court provide the parties notice and a reasonable time to respond.  FRCP Rule 56(f) could not be clearer:

> After giving notice and a reasonable time to respond, the court may:
>
> (1) grant summary judgment for a nonmovant;
> (2) grant the motion on grounds not raised by a party; or
> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

The District Court sua sponte determined to issue summary judgment, noting that "[h]ere, the Court finds a declaratory judgment will clarify the issue of whether the retiree health benefits at issue vested for life."  (SPA 10).  As a direct consequence of that action, the Union was denied the opportunity to challenge the authenticity of the plan language relied on by Xerox and to submit relevant extrinsic evidence essential to the proper determination of the intention of the Parties at the time the contract was entered into.  Absent a notice to the parties and opportunity to respond, a court cannot determine whether the requirements for summary judgment (i.e. the absence of dispute as to material facts and ripeness for decision as a matter of law) are present. 11 Moore's Federal Practice § 56.71 (3d ed. 2023); *see Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996) ("Before granting summary judgment sua sponte, the district court must assure itself that following the procedures set out in

Rule 56 would not alter the outcome. Discovery must either have been completed, or it must be clear that further discovery would be of no benefit. The record must, therefore, reflect the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment."); *see also ING Bank NV v. M/V Temara*, 892 F.3d 511, 524 (2nd Cir. 2018) ("the District Court's failure to provide adequate notice is almost always reversible error, as it is here. A notice-free, *sua sponte* entry of summary judgment is firmly discouraged and is limited only to situations when there is no indication that the party against whom summary judgment would be entered could present evidence that would affect the summary judgment determination.") (internal quotations omitted).

In the instant case, the Union was denied the opportunity to challenge a critical misstatement of facts by Xerox with respect to the reservation of rights provision of the Medical Plan empowering Xerox to unilaterally terminate the Plan. The District Court then relied on the Employer's mischaracterization in its decision: "The Court additionally finds persuasive CBA's inclusion of a 'reservation of rights' language in reaching its conclusion that the present dispute is not arbitrable." (SPA 9).

The District Court relied on disputed language with respect to the reservation of rights clause despite the protests of the Union that the relevant language is the language relied on by the Parties at the time the contract was entered into. The relevant reservation of rights clause is that set out in the 1990 Restatement used by

both Parties in the negotiation of the New Plan in 1994, which stated: "no amendment of the Plan be made which would permit any part of the trust to be used or diverted for  purposes other than for the exclusive benefit of the participants or which would diminish any rights accrued for the benefit of the participants prior to the effective date of the amendment."  (JA 509-510).  Xerox's proffering of a reservation of rights provision without the vesting language contained in the Plan when the Parties negotiated the tripartite retiree benefit structure raises multiple factual issues.  The resolution of those issues is critical to the discernment of the intentions of the negotiating Parties with respect to the ambiguous contract language.

## B.     The District Court failed to apply ordinary principles of contract law.

In *Tackett,* the Supreme Court directed that ambiguities in collective bargaining agreements with respect to lifetime retiree health coverage must be resolved using "ordinary principles of contract law." *Tackett*, 574 U.S. at 435.  The District Court failed to do so.  The "ordinary principles of contract law" required that the meaning of ambiguous contract language be discerned by an examination of extrinsic evidence to determine the intent of the Parties at the time in which the contract was entered into.

> Ordinarily, the circumstances surrounding the execution of the contract may also be shown to be relevant to the determination of what the parties intended by the words they chose.  In construing a contract, the court seeks to ascertain the meaning of the contract at the time and place of its execution.

11 Williston on Contracts § 32:7 (4th ed. 2023). Ambiguous language is to be interpreted using a rule of reason. The adjudicator of the dispute seeks to interpret the language "in the manner the promisor believed, the time of making it, that the promisee understood it." 11 Williston on Contracts § 31:12 (4th ed. 2023). The meaning given to the language must ascribe "...to the parties the most reasonable, probable and natural conduct in light of the object sought to be accomplished." *Glenn Distributors Corp. v. Carlisle Plastics, Inc.,* 297 F.3d 294, 301 n. 4 (3d Cir. 2002). Where, as here, the Parties have a long history of negotiations, the court properly must look to prior negotiations to determine the context of the phrases used. 11 Williston on Contracts § 33:45 (4th ed.).

The District Court clearly failed to apply any traditional contract law standards in its decision. Despite the Union's proffer of evidence as to the history of bargaining and Xerox's continued representations that benefits were for the life of the retiree and their surviving spouse, the District Court made no attempt to ascertain the position of the Parties at the time the contract was entered into.

The Union submits that the Court should have analyzed the dispute under the "ordinary principles of contract law" as summarized by Williston. The failure of the District Court to apply these standards must lead this Court to reverse the decision below and remand the matter with instructions to compel arbitration.

## **CONCLUSION**

The District Court misapplied *Tackett* and refused to acknowledge this Court's decision in *NRG Energy* to preclude arbitration of the instant dispute. Explicit contract language and ample extrinsic evidence support the conclusion that the Parties intended Xerox's contributions to Local 14A retiree health, dental, and life insurance plans to vest for the lifetime of retirees and their surviving spouses. Whether or not the benefits vested is a matter for the arbitrator to decide.

Respondent Local 14A respectfully requests this court: (1) vacate the District Court's decision granting Petitioner's motion to stay arbitration and for a declaratory judgment; (2) vacate the District Court's decision denying Respondent's cross motion to compel arbitration; and (3), remand the matter to the District Court with instructions to compel arbitration.

Dated:     July 28, 2023
           Buffalo, New York            Respectfully Submitted,

_____
Michael Dolce
HAYES DOLCE
135 Delaware Avenue, Suite 502
Buffalo, NY 14202
(716) 912-3480
mdolce@hayesdolce.com
*Attorney for Respondent*

40

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,697 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. R. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14 font, Times New Roman.

Dated:      July 28, 2023

_____
Michael Dolce
HAYES DOLCE
135 Delaware Avenue, Suite 502
Buffalo, NY 14202
(716) 912-3480
mdolce@hayesdolce.com
*Attorney for Respondent*

41

Special Appendix

i

## TABLE OF CONTENTS

**Page**

Decision and Order, filed December 20, 2022........... SPA-1

Judgment, filed December 21, 2022 ......................... SPA-12

Decision and Order, filed April 3, 2023 .................... SPA-13

SPA-1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

XEROX CORPORATION,

                              Petitioner,

v.                                                    Case No. 22-CV-6219-FPG
                                                      DECISION AND ORDER

LOCAL 14A, ROCHESTER REGIONAL JOINT BOARD,
XEROGRAPHIC DIVISION WORKERS UNITED,

                              Respondent.

## INTRODUCTION

Petitioner Xerox Corporation petitions this Court to stay arbitration and moves for a declaratory judgment pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a)(c), alleging that Respondent Local 14A, Rochester Regional Joint Board, Xenographic Division Workers United impermissibly demanded arbitration of Respondent's claim that Petitioner discontinued union members' retirement benefits. *See generally* ECF Nos. 1-4. On June 27, 2022, Respondent answered, moved to dismiss Petitioner's petition, and cross-moved to compel arbitration and for injunctive relief. ECF Nos. 16-19. On July 21, 2022, Petitioner responded to Respondent's motions. ECF Nos. 24, 25. On July 28, 2022, Respondent replied. ECF No. 26. On August 28, Petitioner filed a sur-reply. ECF No. 29.

For the reasons set forth below, Petitioner's petition to stay arbitration proceedings and motion for declaratory judgment are GRANTED. Respondent's motions to dismiss, to compel arbitration, and for injunctive relief are DENIED.

SPA-2

## BACKGROUND

Respondent is a labor union that represents employees of Petitioner.  *See* ECF No. 1.  On June 11, 2018, Petitioner and Respondent executed a collective bargaining agreement ("CBA") that governed, *inter alia*, whether Petitioner may modify retiree health benefits.  *Id*. at 2.  It is undisputed that the CBA expired on November 30, 2021.  *Id*.  The parties did not extend the agreement, nor did the parties execute a successor agreement after the CBA expired.  *Id*.

On December 30, 2021, Petitioner notified Respondent that it intended to discontinue health benefits to former employees that had retired before the CBA expired.  *Id*.  On January 7, 2022, pursuant to a Grievance Procedure outlined in Article XI of the CBA, Respondent filed a grievance at Step 3 of the procedure, alleging that Petitioner's intended action would "modify and/or terminate benefits which had accrued and/or *vested* under the agreement, causing numerous violations of the CBA, including but not limited to violations of Article VIII and any other applicable provisions."  *Id*. at 2-3 (emphasis added).  The Grievance Procedure provides that if a grievance is not satisfactorily settled at Step 3, the grievance may be "appealed to arbitration by either party upon written notice to the other party within sixty (60) working days from the date the Step 3 answer was delivered to an acknowledged in writing by the Business Agent."  *Id*.  According to Petitioner, the Grievance Procedure, was provided for current employees, not individuals that had retired before the CBA expired.  *Id* at 3.  According to Respondent, the arbitration provision survived the CBA's expiration because the benefits had vested for life.  *Id*.

On February 25, 2022, Petitioner rejected Respondent's grievance at Step 3 of the procedure.  *Id*.  Petitioner claimed that Respondent's "grievance is without merit because neither the main body of the [CBA] nor the plan documents incorporated in it by reference contain clear and unambiguous language sufficient to vest benefits for life under well-established legal

**SPA-3**

precedent[.]"  *Id.*  Petitioner claimed the CBA and incorporated plan documents did not vest a retiree with health benefits for life, citing various provisions of the CBA for support.[1]  *Id.*  The incorporated plan documents that govern each applicable retiree health benefit plan provided to retirees under the expired CBA are the: (1) Xerox Medical Care Plan for Retired Employees ("Old Plan"); (2) Xerox Retiree Health Care Plan ("New Plan"); and (3) Xerox Corporation Retiree Health Reimbursement Plan ("HRA Plan").  *Id.* at 4.  Petitioner contends that the terms within each plan's documents reserve to Petitioner a right to amend, suspend or terminate the benefits provided by each plan because the CBA provides that Xerox "specifically reserves the right to amend, suspend or terminate the Plan described herein at any time and for any reason." *Id.* at 4. In short, Petitioner alleges that no provision or plan document conferred or vested retiree benefits after expiration of the CBA.  *Id.*

On March 2, 2022, Respondent demanded arbitration of the grievance after its rejection at Step 3 of the Grievance Procedure.  *Id.*  Respondent contended that health benefits for retirees had vested beyond the expiration of the CBA.  *Id.*  On March 20, 2022, Petitioner rejected Respondent's request for arbitration, stating that "the company declines to arbitrate the grievance [because] […] the collective bargaining agreement expired on November 30, 2021.  Accordingly, there is no arbitration provision currently in effect."  *Id.*

On April 14, 2022, Respondent notified Petitioner of its intent to arbitrate the grievance and further requested that Petitioner submit the grievance to arbitration.  *Id.* at 5.  To date, Petitioner has not participated in Respondent's requested arbitration.  *Id.*

---

[1] For example, Article VIII(N)(1) of the CBA provides "Eligibility for retirement and provision of benefits for retirees are set forth in Schedule H.," and Schedule H as referenced in Article VIII(N)(1), provides that "This Schedule is intended as an outline only and the benefits described are subject to the detailed terms and conditions of the actual plans or contracts, as well as to the provisions of applicable state and federal laws."  *Id.*

SPA-4

## LEGAL STANDARD

Section 301 of the Labor Management Relations Act ("LMRA") grants federal courts jurisdiction over disputes between employers and labor unions that require interpretation of collective bargaining agreements. 29 U.S.C. § 185. With respect to whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance, "[u]nless the parties clearly and unmistakably provide otherwise, the question of [arbitrability] is to be decided by the court […]," not an arbitrator. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (holding that arbitrability is a judicial determination); *see also Constr. Indus. Emp's Ass'n v. Local Union No. 210, Laborers Intern. Union of N. Am., AFL-CIO*, 580 F.3d 89, 94 (2d Cir. 2009) (same).

Generally, a party's "[c]ontractual obligations will cease […] upon termination of [a] bargaining agreement." *Litton Fin. Printing Div., Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 207 (1991). Collective bargaining agreements, including those that establish arbitration procedures, are to be interpreted "according to ordinary principles of contract law[.]" *M & G Polymers USA, LLC v. Tackett*, 575 U.S. 427, 435 (2015). "In this endeavor, as with any other contract, the parties' intentions control." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010).

Contractual rights which vested under a collective bargaining agreement will, as a general rule, survive termination of the agreement and remain subject to the agreement's terms. *See Litton*, 501 U.S. at 207. Indeed, a "collective bargaining agreement [may] provid[e] in explicit terms that certain benefits continue after the agreement's expiration." *Id.* However, where an agreement is silent as to the duration of retiree benefits, a court generally "may not infer that the parties intended those benefits to vest for life." *Id.* at 442. Traditionally, courts "should not construe ambiguous

4

**SPA-5**

writings to create lifetime promises." *Tackett*, 575 U.S. at 441. "Because vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly; the intent to vest must be found in the plan documents and must be stated in clear and express language." *Id*. Still, this rule does not preclude a conclusion that the parties' intended to vest lifetime benefits for retirees. *See id*. at 442.

## DISCUSSION

The Court must determine whether the parties' dispute over Petitioner's discontinuation of retiree health benefits, which occurred after the expiration of the CBA, is subject to arbitration under the expired agreement. For the reasons explained below, the Court concludes that it is not. Accordingly, Petitioner's petition to stay arbitration proceedings and motion for a declaratory judgment is granted and Respondent's motion to dismiss is denied.

In addition, because the Court concludes that the parties' dispute is not arbitrable, the Court need not address Respondent's cross-motion for injunctive relief. *See* ECF No. 17. Because arbitrability of the underlying dispute for which injunctive relief is requested is a predicate for such relief, Respondent's cross-motion for injunctive relief is denied as moot. *See Niagara Hooker Employees Union v. Occidental Chem. Corp*., 935 F.2d 1370, 1376 (2d Cir. 1991).

### I.     Arbitrability

The primary issue is whether Respondent's challenge to Petitioner's modification of retiree health benefits is arbitrable. Petitioner contends that the dispute is not because (i) the CBA that required arbitration proceedings has expired; (ii) the modification occurred after its expiration; and (iii) the arbitration procedure does not govern the dispute because the health benefits in question did not vest for life pursuant to the agreement. Respondent does not dispute contentions (i) and (ii), but argues with respect to (iii) that the dispute is arbitrable because the health benefits vested

for life and, therefore, the arbitration procedure governing disputes over modification of such benefits survived the agreement's expiration.  For the reasons explained below, the Court agrees with Petitioner.

As discussed, contractual obligations of parties to a collective bargaining agreement, including a duty to arbitrate, ordinarily terminate upon a collective bargaining agreement's expiration.  *See Litton*, 501 U.S. at  206; *Williamsbridge Manor Nursing Home v. Local 144 Div. of 1199, Nat'l Health & Hum. Servs. Emp's Union, AFL-CIO*, 107 F. Supp. 2d 222, 225 (S.D.N.Y. 2000) (collecting cases).  An arbitration provision will survive expiration of the agreement in only limited circumstances.  *See Litton*, 501 U.S. at 206.  A post-expiration grievance, as alleged here, survives expiration only "where an action taken after expiration infringes a right that accrued or vested under the agreement[.]"  *Id*. at 205-06.  If such a right vested, a grievance based on an alleged violation of that right is arbitrable.  *Id*.

In this case, there is no dispute that (i) the CBA expired on November 30, 2021; (ii) Petitioner's modification of retiree health benefits occurred after expiration of the CBA on December 30, 2021; and (iii) Respondent brought its arbitration request after modification on January 7, 2022.  *See* ECF No. 1.  The central issue is whether the CBA vested retiree health benefits beyond the expiration of the agreement.  To determine if it did, the Court must apply "ordinary principles of contract law" to the CBA and its incorporating plan documents.  *Tackett*, 574 U.S. at 441.

Petitioner relies in chief upon the following language.  First, the CBA includes a general durational clause that provides that the "agreement shall except as herein otherwise stated, … continue in force and effect until" the CBA's expiration.  ECF No. 24 at 17.  Further, Schedule H of the CBA, the schedule that governs "Benefits for Retirees and Their Dependents," states that it

is "intended as an outline […] subject to the detailed terms and conditions of the actual plans or contracts[.]" *Id*. In addition, the incorporating plan documents each include reservation of rights language that reserve to Petitioner the right to "amend, suspend or terminate each of the retiree health benefit plans "at any time and for any reason." *Id*. Petitioner contends that such language enables Petitioner to modify retiree health benefits where no "clear and express" language vests such benefits for life and the agreement and incorporating plan documents are otherwise silent with respect to vesting. *See* ECF No. 1; *Tackett*, 575 U.S. at 441

Respondent disagrees. It notes that the Old Plan and New Plan incorporating documents provide that retiree health benefits for individuals who retired before the expiration of the CBA "shall continue" until "11:59 p.m. on the day of the Retiree's *death*." ECF No. 18 at 10 (emphasis added). In addition, the same documents provide that "[i]n the event of the *death* of a Retiree while a Participant under the Plan, provided that the Eligible Dependents of such Retiree continue to make contributions under Section 3.2(b), the Eligible Dependent spouse of such Retiree shall continue as a Participant in the Plan until his or her *death*." *Id*. at 16 (emphasis added). Further, the incorporating plan documents provide that retiree health benefits will be provided until "the close of business on the day the Retiree ceases to be a Retiree." ECF No. 18 at 15. The HRA plan documents, further, provide that a benefits allowance provided by a particular program under the HRA shall be calculated with consideration of "the retiree's expected lifetime using accepted actuarial assumptions." ECF No. 17-2 at 10. Respondent's primary contention is that the inclusion of these references to retirees' death and life expectancy are sufficient to vest such benefits for life beyond the duration of the CBA. *See generally* ECF No. 18.

The Court concludes that the language Respondent relies upon does not clearly or expressly vest the benefits in question for life. In addition, absent other language that may reasonably

SPA-8

support an interpretation that the benefits vested, Petitioner's right to modify such benefits is preserved by the "reservation of rights" language referenced above.

First, Respondent's contention that the above references to benefits in relation to a retiree's "death" is equivalent to tying benefits to a retiree's lifetime beyond the expiration of a CBA is incorrect.  The Second Circuit has made clear that clauses providing benefits to retirees until "a retiree's death or […] the age at which he becomes or could become eligible for Medicare . . . cannot reasonably read as binding [an employer] to vest the benefits at issue."  *Joyce v. Curtiss-Wright Corp*., 171 F.3d 130, 134 (2d Cir. 1999).  This is, in part, because a reference to a retiree's death is susceptible to the "reasonable explanation" that a retiree's death "obviates the need for [such benefits]" during the term of the controlling agreement.  *Id*. at 135.  In *Joyce*, the Second Circuit held that such a reference to the "death" of a retiree is insufficient to overcome the Supreme Court's admonition that an employer's commitment to vest "is not to be inferred lightly" and that it must be found in "express language [in the] plan documents."  *Id*. at 135; *Tackett*, 575 U.S. at 441.  Indeed, other courts have likewise concluded, and the Second Circuit has affirmed, that "until death" language is "not the functional equivalent of lifetime language" which is "stronger and more explicit" with respect to vesting and means "for life."  *Kelly v. Honeywell Int'l, Inc*. 233 F.Supp.3d 302, 314 (D. Conn. 2017), *aff'd*, 933 F.3d 173 (2d Cir. 2019), citing *Grove v. Johnson Controls, Inc*., 176 F.Supp.3d 455 (M.D. Pa. 2016), then citing *Bland v. Fiatallis N.A., Inc*., 401 F.3d 779, 786 (7th Cir. 2005).  The Court accordingly cannot conclude that the CBA and incorporating plan documents' references to a retiree's "death" compel the inference that the retiree health benefits in question vested for life.

Second, with respect to Respondent's contention that the use of a retiree's actuarily calculated life expectancy unambiguously vests the above referenced benefit program under the

HRA plan for life, the Court similarly finds this aspect of the relevant HRA plan insufficient to vest such a benefit.  No case in the Second Circuit has directly addressed such a claim, but the Court concludes that HRA plan documents do not show an intent to vest such a benefit.  Indeed, as the plan documents show, the above referenced life expectancy language is but one of several factors used to calculate a retiree's benefit allowance under the HRA plan.[2]  Accordingly, absent "express" language providing that the benefit allowance vested for life, the Court finds that the multi-factor calculation method the HRA plan provides, when viewed within the totality of the plan, is not "capable of reasonably being interpreted" to vest such benefits for life.  *Am Fed'n of Grain Millers, AFL-CIO v. Int'l Mult.foods Corp.*, 116 F.3d 976, 980 (2d Cir. 1997).

Moreover, in the absence of "clear and express" language in favor of vesting, the Court additionally finds persuasive the CBA's inclusion of "reservation of rights" language in reaching its conclusion that the present dispute is not arbitrable.  Several courts provide persuasive authority for the conclusion that, absent other language to the contrary, a CBA's reservation of rights language will preclude a claim that retiree health benefits may have vested before the expiration of the agreement in question.  *See, e.g.*, *Cooper v. Honeywell Int'l*, 884 F.3d 612, 621 (6th Cir. 2018) (concluding that "[t]he retiree medical plan itself provides a final indication that the CBA did not intend to vest retiree healthcare benefits" where the "plan also contain[ed] a reservation-of-rights clause"); *Beale v. Kraft Heinz Foods Co.*, No. 16-cv-1119, 2018 WL 2085277, at *7 (S.D.

---

[2] The program provides in pertinent part that:

> The pre-65 Benefits Allowance will be the total of three components:  The Basic Allowance based on the premium of the most efficient HMO's, this amount will be capped at two times the 1995 amount; the Service Component, an amount equal to $20 times total years of service with the Company up to a maximum of 30 years; and the LifeCycle Assistance Component based on the employee's forfeited balance in the LifeCycle Assistance Program spread over the retiree's expected lifetime using accepted actuarial assumptions.

ECF No. 17-2 at 10.

Iowa Mar. 27, 2018) ("[A]n unambiguous reservation-of-rights provision is sufficient without more to defeat a claim that retirement welfare plan benefits vested."); *Grove v. Johnson Controls, Inc.*, 176 F. Supp. 3d 455, 479-80 (M.D. Pa. 2016) ("In conclusion, the reservation of rights language . . . is clear and unambiguous, and forecloses any notion of vesting."); *Blankenship v. Dominion Energy Transmission*, No. 2:18-cv-01208, 2019 WL 13198125, at *13 (W.D. Pa. Oct. 2, 2019) (finding reservation of rights provision "clearly and unequivocally defeats a claim that the policy contains the express language needed to effectuate a vesting of benefits").

For these reasons, the Court concludes that the retiree health benefits did not vest pursuant to the CBA and, thus, Petitioner's modification of those benefits after the expiration of the CBA is not subject to the CBA's arbitration provision.

## II.   Declaratory Judgment

To determine whether declaratory judgment is proper, courts look to "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Read, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). Here, the Court finds a declaratory judgment will clarify the issue of whether the retiree health benefits at issue vested for life and, as a corollary, whether a dispute regarding a modification of such benefits is arbitrable.

The Court accordingly concludes that (1) the CBA between the parties effective June 11, 2018 through November 30, 2021 did not vest lifetime retiree health benefits past the duration of the CBA; (2) there is no existing agreement to arbitrate the issues or claims set forth in Respondent's arbitration request; and (3) Respondent's January 7, 2022 Grievance is not arbitrable under the now-expired CBA.

SPA-11

## CONCLUSION

For the reasons set forth above, Petitioner's motion to stay arbitration proceedings and for a declaratory judgment (ECF Nos. 1, 2) is GRANTED.   Respondent's motions to dismiss, to compel arbitration and for injunctive relief (ECF Nos. 16, 17) are DENIED.   The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 20, 2022
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Court Judge
Western District of New York

SPA-12

Judgment in a Civil Case
_____

United States District Court
_____WESTERN DISTRICT OF NEW YORK_____


XEROX CORPORATION,                    **JUDGMENT IN A CIVIL CASE**
                                      CASE NUMBER: 22-CV-6219
        v.
                          Petitioner,


LOCAL 14A, ROCHESTER REGIONAL JOINT BOARD,
XEROGRAPHIC DIVISION WORKERS UNITED,


                          Respondent.

☐ **Jury Verdict**.  This action came before the Court for a trial by jury.  The issues have
been tried and the jury has rendered its verdict.

☒ **Decision by Court**.  This action came to trial or hearing before the Court.  The
issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that judgment is entered in favor of the Petitioner.




Date: December 21, 2022                    MARY C. LOEWENGUTH
                                           CLERK OF COURT

                                           By: s/Rosemarie M. Eby-Collom
                                                Deputy Clerk

SPA-13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

XEROX CORPORATION,

                                    Petitioner,

                                                            Case No. 22-CV-6219-FPG
v.                                                          DECISION AND ORDER

LOCAL 14A, ROCHESTER REGIONAL JOINT BOARD,
XEROGRAPHIC DIVISION WORKERS UNITED,

                                    Respondent.

_____

## INTRODUCTION

On May 16, 2022, Xerox Corporation ("Petitioner") petitioned this Court to stay arbitration and moved for a declaratory judgment pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a)(c), alleging that Local 14A, Rochester Regional Joint Board, Xenographic Division Workers United ("Respondent") impermissibly demanded arbitration of its claim that Petitioner improperly discontinued union members' retirement benefits. *See generally* ECF Nos. 1-4. On June 27, 2022, Respondent answered, moved to dismiss Petitioner's petition, and cross-moved to compel arbitration and for injunctive relief. ECF Nos. 16-19. On July 21, 2022, Petitioner responded. ECF Nos. 24, 25. On July 28, 2022, Respondent replied. ECF No. 26. On August 28, Petitioner filed a sur-reply. ECF No. 29.

On December 20, 2022, the Court (i) denied Respondent's motion to dismiss and motion to compel arbitration and (ii) granted Petitioner's motion to stay and for a declaratory judgment. ECF No. 30. On January 13, 2023, Respondent timely filed a motion to alter the Court's judgment under Federal Rule of Civil Procedure 59(e)[1], arguing that an "intervening change in controlling

_____

[1] Often referred to as a "Motion for Reconsideration."

1

law [] invalidates" the Court's prior Decision and Order.  ECF No. 32 at 1.  On February 6, 2023, Petitioner responded.  ECF No. 37.  For the reasons below, Respondent's motion is DENIED.

## BACKGROUND

Respondent is a labor union that represents employees of Petitioner.  *See* ECF No. 1.  On June 11, 2018, Petitioner and Respondent executed a collective bargaining agreement ("CBA") that governed, *inter alia*, Petitioner's modification of retiree health benefits.  *Id*. at 2.  The CBA expired on November 30, 2021.  *Id*.  The parties did not extend the agreement, nor did the parties execute a successor agreement after the CBA expired.  *Id*.

On December 30, 2021, Petitioner notified Respondent that it intended to discontinue health benefits to former employees that had retired before the CBA expired.  *Id*.  On January 7, 2022, pursuant to a Grievance Procedure outlined in Article XI of the CBA, Respondent filed a grievance at Step 3 of the Procedure, alleging that Petitioner's intended action would "modify and/or terminate benefits which had accrued and/or *vested* under the agreement, causing numerous violations of the CBA, including but not limited to violations of Article VIII and any other applicable provisions."  *Id*. at 2-3 (emphasis added).  The Grievance Procedure provided that if a grievance is not satisfactorily settled at Step 3 of the Procedure, the grievance may be "appealed to arbitration by either party upon written notice to the other party within sixty (60) working days from the date the Step 3 answer was delivered to an acknowledged in writing by the Business Agent."  *Id*.  Respondent contends that the arbitration provision survived the CBA's expiration because the benefits had vested for life.  *Id*.

On February 25, 2022, Petitioner rejected Respondent's grievance at Step 3 of the Procedure.  *Id*.  Petitioner claimed that Respondent's "grievance is without merit because neither the main body of the [CBA] nor the plan documents incorporated in it by reference contain clear

2

**SPA-15**

and unambiguous language sufficient to vest benefits for life under well-established legal precedent[.]" *Id*. That is, Petitioner claimed the CBA and incorporated plan documents did not vest a retiree with health benefits for life.[2] *Id*. The incorporated plan documents that govern each applicable retiree health benefit plan provided to retirees under the expired CBA are the: (1) Xerox Medical Care Plan for Retired Employees ("Old Plan"); (2) Xerox Retiree Health Care Plan ("New Plan"); and (3) Xerox Corporation Retiree Health Reimbursement Plan ("HRA Plan"). *Id*. at 4. Petitioner relatedly contended that the terms of each plan document reserve to Petitioner a right to amend, suspend or terminate the benefits provided by each plan because the CBA provides that Petitioner "specifically reserves the right to amend, suspend or terminate the Plan described herein at any time and for any reason." *Id*. at 4.

On March 2, 2022, Respondent demanded arbitration of the grievance after its rejection at Step 3 of the Procedure. *Id*. Respondent contended that health benefits for retirees had vested beyond the expiration of the CBA. *Id*. On March 20, 2022, Petitioner rejected Respondent's request for arbitration, stating that "the company declines to arbitrate the grievance [because] […] the collective bargaining agreement expired on November 30, 2021. Accordingly, there is no arbitration provision currently in effect." *Id*.

On April 14, 2022, Respondent notified Petitioner of its intent to arbitrate the grievance and further requested that Petitioner submit the grievance to arbitration. *Id*. at 5. To date, Petitioner has not participated in Respondent's requested arbitration. *Id*.

---

[2] For example, Article VIII(N)(1) of the CBA provides "Eligibility for retirement and provision of benefits for retirees are set forth in Schedule H.," and Schedule H as referenced in Article VIII(N)(1), provides that "This Schedule is intended as an outline only and the benefits described are subject to the detailed terms and conditions of the actual plans or contracts, as well as to the provisions of applicable state and federal laws." *Id*.

## LEGAL STANDARD

"[T]he primary grounds for granting a Rule 59(e) motion to alter or amend are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Densberger v. United Techs. Corp.*, 125 F. Supp. 2d 585, 597 (D. Conn. 2000) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)), *aff'd*, 297 F.3d 66 (2d Cir. 2002); *see also Schwartz v. Twin City Fire Ins. Co.*, 492 F. Supp. 2d 308, 324-25 (S.D.N.Y. 2007). Whether to grant a Rule 59(e) motion is within the discretion of the district court, *see McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983), and it is "not to be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotations and citation omitted).

"'Rule 59 is not a vehicle for […] presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a "second bite at the apple[.]"'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998). "Rather, 'the standard for granting [a Rule 59 motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *Id.* (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (alteration in original)); *see also Miran v. Solomon*, No. 15-CV-6133-FPG, 2021 WL 48517, at *2 (W.D.N.Y. Jan. 6, 2021).

## DISCUSSION

Respondent moves for reconsideration of the Court's prior Decision and Order on the basis that its challenge to Petitioner's discontinuation of retiree health benefits is arbitrable because an "intervening change in controlling law [] invalidates" the Court's Decision and Order; namely, the

**SPA-17**

Second Circuit's decision in *Local Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. NRG Energy, Inc.*, 53 F.4th 42, 46 (2d Cir. 2022).  ECF No. 32 at 1.  Respondent argues that *Local Union 97* is an "intervening change in controlling law" that compels arbitration of Respondent's claim because the Court now need only "determine whether [Respondent] has raised an *arguable* claim that the benefit[s] [were] intended to be provided for life, and if so, the presumptions favoring arbitrability must be negated expressly or by clear implication."  *Loc. Union 97*, 53 F.4th at 55 (emphasis added); ECF No. 32 at 1.  Petitioner maintains that *Local Union 97* not an "intervening change in controlling law" and the Court's prior Decision and Order is "consistent with the standard articulated" in *Local Union 97* because the Second Circuit's decision "merely clarified" the standard to be applied in the context of a motion to compel arbitration.  ECF No. 37 at 1, 4.  For the reasons explained below, Respondent's motion for reconsideration is DENIED.

## I.     Intervening Change

As a threshold matter, Petitioner appears to first argue that Respondent's motion should be denied because *Local Union 97* was decided on November 10, 2022, approximately one month before the Court's prior Decision and Order in the present action.  *See* ECF No. 37 at 3.  According to Petitioner, *Local Union 97* is not an "intervening change in controlling law" because the decision did not "postdate" the Court's prior Order.  *Id.* (citing *Weinreb v. Xerox Bus. Servs.*, No. 16-cv-6823, 2020 WL 4288376, at *2 (S.D.N.Y. July 27, 2020)).  Respondent contends that the decision is, nevertheless, "a change in controlling law" that the Court "misapprehended" and that the decision "could [not] have been raised in prior briefing" because briefing in the present action concluded in August 2022.  ECF No. 32 at 2.

To the extent Petitioner argues that the date of the decision precludes reconsideration, the timing of the Second Circuit's decision in *Local Union 97* is not relevant to whether it constitutes

a "change in controlling law" such that it "might reasonably be expected to alter the [Court's] conclusion[.]" *Shrader v. CSC Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).   Because the gravamen of Respondent's motion for reconsideration is whether the decision changed "controlling law[,]" the Court rejects Petitioner's first argument and proceeds to determine whether *Local Union 97* represents such a change.   *Id.*

## II.   Arbitrability

For the reasons set forth below, the Court concludes that *Local Union 97* does not constitute a change in "controlling law." *Shrader*, 70 F.3d at 257.   Because the written language of the CBA is not capable of reasonably being interpreted as creating a promise on the part of the employer to vest benefits for life, the Court's conclusion in its prior Decision and Order that Respondent's challenge to Petitioner's modification of retiree health benefits is not arbitrable is consistent with *Local Union 97*.

In *Local Union 97*, the Second Circuit addressed a dispute between an employer and labor union as to whether a grievance that arose after the expiration of an agreement governing such a grievance is subject to arbitration.   *See* 53 F.4th at 50.   With respect to such a grievance, the Second Circuit first recognized that, in general, "'matters and disputes arising out of the relation governed by contract' are subject to [a] presumption in favor of arbitration even after the contract expires." *Id.* (quoting *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991) (discussing *Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 255 (1977)).   Indeed, "'[w]here [a] dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.'"   *Loc. Union 97*, 53 F.4th at 50 (quoting *Nolde*, 430 U.S. at 255).

6

SPA-19

With respect to a party's claim that a contractual provision in an expired collective bargaining agreement created "a promise to vest lifetime" benefits, such as Respondent's claim here, the Second Circuit stated that to reach arbitration, "[i]t is enough to point to *written language capable of reasonably being interpreted* as creating a promise on the part of the employer to vest the recipient's benefits." *Loc. Union 97*, 53 F. 4th at 55 (quoting *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 85 (2d Cir. 2001) (emphasis added). The Second Circuit further explained that courts, in determining whether a party has done so, "solely need to determine whether [that party] has raised an *arguable* claim that the benefit was intended to be provided for life" to determine arbitrability. *Loc. Union 97*, 53 F. 4th at 55 (emphasis added). The merits of such a dispute are immaterial; a court need "decide only that the parties' dispute is arbitrable [under an expired CBA] based on [a party] identifying '*written language capable of reasonably being interpreted* as creating a promise on the part of the employer to vest the recipient's benefits." *Id.* (quoting *Devlin*, 274 F.3d at 83) (emphasis added).

Respondent's present motion for reconsideration rests upon the Second Circuit's instruction that lower courts should not reach the merits of a claim that a benefit vested for life, but need only determine whether such a claim is "arguable" for the claim to be arbitrable. ECF No. 32 at 1. Respondent contends that this instruction's use of the word "arguable" constitutes a "change in controlling law." *Shrader*, 70 F.3d at 257. The Court disagrees.

The instruction at issue is, at most, a clarification of the controlling law applicable to the present action. When considered within the context of the Second Circuit's decision, the Court cannot conclude that the instruction introduces a new, independent standard that such a claim need only be "arguable," without more, to reach arbitration. Before and after its articulation of such a standard, as discussed above, the Second Circuit twice instructed courts that a party must identify

7

"written language capable of reasonably being interpreted" as creating a promise to vest to reach arbitration.    *Devlin*, 274 F.3d at 83.    Accordingly, the Court concludes that the proper interpretation of *Local Union 97* is that an "arguable claim," as articulated by the Second Circuit, *is* a claim which identifies "written language capable of reasonably being interpreted" to create a promise to vest. *Id*. at 83.  If the Second Circuit intended to announce a new, independent standard that a claim must merely be "arguable" to be arbitrable, the Second Circuit likely would not have proceeded to determine whether Local Union 97 identified "written language capable of reasonably being interpreted" to create a promise to vest before reaching its conclusion that Local Union 97's claim was arbitrable, as it did.  *Loc. Union 97*, 53 F.4th at 55.  For these reasons, the Court concludes that *Local Union 97*, at most, clarified the legal standard applicable to the present action and is not an "intervening change in controlling law." *Shrader v. CSC Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995).

As the Court concluded in its prior Decision and Order, the language included and incorporated into the CBA that Respondent contends vested the benefits in question "cannot reasonably be read as binding [Petitioner] to vest the benefits at issue[,]" and "is not capable of reasonably being interpreted to vest such benefits for life." *Xerox Corp. v. Loc. 14A, Rochester Reg'l Joint Bd., Xerographic Div. Workers United*, No. 22-CV-6219-FPG, 2022 WL 17822137, at *4 (W.D.N.Y. Dec. 20, 2022) (citations and internal quotation marks omitted).  Consistent with *Local Union 97* and contrary to Respondent's contention, the Court did not analyze the merits of Respondent's claim, but determined that Respondent did not meet its burden of identifying "written language capable of reasonably being interpreted" to create a promise to vest before concluding that the claim was not arbitrable.  *Loc. Union 97*, 53 F.4th at 55.  Even if the Court's prior Decision and Order assessed or is construed as assessing the merits of Respondent's claim,

the language Respondent relies upon is nevertheless "not capable of reasonably being interpreted to vest such benefits for life[,]" for the reasons stated in the Court's prior Decision and Order. Accordingly, *Local Union 97* cannot "reasonably be expected to alter the [Court's] conclusion" that Respondent's claim is not arbitrable. *Shrader v. CSC Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). In sum, because the Court's prior Decision and Order applied the correct standard and *Local Union 97* does not constitute a "change in controlling law[,]" Respondent's motion for reconsideration is denied. *Shrader*, 70 F.3d at 257.

## CONCLUSION

For the reasons set forth above, Respondent's Motion for Reconsideration is DENIED. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 3, 2023
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Court Judge
Western District of New York